```
UNITED STATES EASTERN DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
THEODORE KING and GARY La BARBERA,          :
TRUSTEES OF LOCAL 282 INTERNATIONAL         :
BROTHERHOOD OF TEAMSTERS WELFARE,           :
PENSION, ANNUITY, JOB TRAINING AND          :
VACATION SICK LEAVE TRUST FUNDS,            :
                                            :
                         Plaintiffs,        :    MEMORANDUM and
                                            :    ORDER
              -against-                     :    05-CV-1085 (SMG)
                                            :
                                            :
                                            :
SILVER STREAK TRANSPORT LTD. and            :
CYNTHIA PERSICHILLI,                        :
                                            :
                         Defendants.        :
-------------------------------------------------------------------------X
GOLD, S., U.S.M.J.:
```

## Introduction

Plaintiffs, the Trustees of Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation/Sick Leave Trust Funds (the "Funds"), bring this action pursuant to the Employer Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145. Plaintiffs seek to recover unpaid fringe benefit contributions, interest, liquidated damages, attorney's fees, and costs allegedly owed to the Funds by defendants Silver Streak Transport Ltd. ("Silver Streak") and Cynthia Persichilli.

## Procedural History

Plaintiffs filed their complaint on February 28, 2005, and Silver Streak filed an answer on March 14, 2005. Docket Entries 1, 5. On February 3, 2006, the parties consented to Magistrate Judge jurisdiction for all purposes including entry of judgment. Docket Entry 13. Plaintiffs filed

1

an Affidavit in support of their claims for damages on February 28, 2006. Docket Entries 14-16. Defendants submitted opposition to plaintiffs' claim for damages, dated March 9, 2006, but not filed electronically until April 10, 2006. Docket Entry 21. Plaintiffs filed a response to defendants' opposition on April 7, 2006. Docket Entry 20.

On July 19, 2006, I held a telephonic hearing, at which time both counsel presented oral argument on the issues discussed herein. Neither party sought to call witnesses and the parties requested that I render judgment based solely on the existing record. Hr. 6-7.[1] Plaintiffs submitted a post-argument letter on July 21, 2006. Docket Entry 23. Defendants were given the opportunity to submit a post-argument letter in response but declined to do so.

## Discussion

The parties have requested that I make findings of fact and conclusions of law, and enter judgment, based solely on the submitted papers and oral argument. Hr. 6-7. For the reasons discussed below, I dismiss the claims against Cynthia Persichilli, resolve the sole factual dispute in plaintiffs' favor, and direct the Clerk to enter a judgment against defendant Silver Streak in the amount of $25,588.09.

**I. The claims against Cynthia Persichilli**

Plaintiffs allege that Cynthia Persichilli, an officer of the Silver Streak corporation, submitted a contribution check to the Funds in her "personal capacity" for the period of December, 2001, and is therefore personally liable for the damages plaintiffs incurred when the check was returned for insufficient funds. Cmpl. ¶¶ 28-31; Hr. 7-8.

As I noted at the hearing on July 19, 2006, the check in question was drawn on a

---

[1]"Hr." refers to the oral argument of July 24, 2006, Docket Entry 24.

corporate account and was clearly tendered to satisfy a corporate obligation. Moreover, plaintiffs' acceptance of many other checks tendered in the same manner as this one over the course of years makes it clear that plaintiffs understood Ms. Persichilli to be satisfying a corporate obligation and were not relying upon her personal creditworthiness. Hr. 7-9. Therefore, the claims against Ms. Persichilli are dismissed.

**II. The documents relevant to each period of delinquent contributions**

Plaintiffs allege that defendant Silver Streak was delinquent in its payments for numerous contribution periods spanning from September, 2000 through June, 2005. Pl. ¶¶ 14-43.[2] Several bargaining agreements and trust declarations were in operation between the parties over that period of time. Because the agreements covering different periods set forth different relevant terms, such as the interest rate to be applied in the event of untimely payments, it is necessary to determine which document was in effect during each relevant time period.

*A. Delinquent contributions from September, 2000 through October, 2003*

Plaintiffs and Silver Streak entered into a Collective Bargaining Agreement for the period from July 1, 1993 through June 30, 1996 ("1993-1996 CBA"). Pl. ¶ 7 and Ex. B. The terms of the 1993-1996 CBA remained in effect through June 30, 1999, pursuant to a Memorandum of Agreement ("MOA") executed by plaintiffs and Silver Streak. Pl. ¶ 8 and Ex. C. Plaintiffs executed a Restated Agreement and Declaration of Trust prior to December 31, 1999 (the "1999 Declaration"), although the exact date of this document's execution is not stated in the record. *See* Pl. ¶ 11 and Ex. G; Hr. 14-16.

---

[2]"Pl." refers to Plaintiffs' Affirmation in Support of Plaintiffs' Claims for Damages, dated February 28, 2006, Docket Entries 14-16.

Silver Streak did not sign the 1999 Declaration. Nevertheless, I conclude that Silver Streak is bound by its terms and conditions by virtue of its course of conduct.

An employer may be found to have agreed to the terms of an expired or unsigned CBA through a course of conduct indicative of an intent to be bound by those terms. *Brown v. C. Volante Corp.*, 194 F.3d 351 (2d Cir. 1999). Whether an employer will be bound by an expired or an unsigned CBA depends on the specific facts of the case. *Id*. at 354-55. Here, the facts establish defendant's intention to be bound.

First, Silver Streak continued to use Local 282 employees and to submit signed remittance reports following the expiration of the MOA. Pl. ¶ 9 and Ex. D. Indeed, the following clause appears in capital letters above the signature line on every remittance report: "BY SIGNING THIS REPORT YOU AGREE TO ACCEPT THE TERMS OF THE CURRENT LOCAL 282 INDUSTRY COLLECTIVE BARGAINING AGREEMENT COVERING THE WORK PERFORMED BY YOUR EMPLOYEES." Pl. Ex. D. Silver Streak also complied with increases in wage contributions as set forth in the Collective Bargaining Agreement that was executed by plaintiffs and other industry employers for the period 2002 through 2005 (the "2002 CBA"), although Silver Streak did not sign that agreement either. Pl. ¶ 10 and Ex. E. Finally, Silver Streak consented to audits covering periods from 1999 through 2004 in accordance with the terms of the 1999 Declaration. Pl. ¶ 9. These uncontradicted facts, and Silver Streak's concession that it has no basis to argue that the 1999 Declaration was *not* in effect from September, 2000 through October, 2003 (Hr. 16), make it clear that Silver Streak consented to

the terms of the 1999 Declaration through its course of conduct.[3]

The 1999 Declaration provides, in pertinent part:

> The failure of an Employer to pay the contributions required hereunder promptly when due shall be a violation of the Collective Bargaining Agreement between the said Employer and the Union as well as a violation of the Employer's obligations hereunder. . . . In addition to any other remedies to which the parties may be entitled an Employer in default for five working days shall be obligated to pay interest, at the rate specified in Section 5-501 of the General Obligations Law of the State of New York, as the same may be amended from time to time, on the monies due to the Trustees from the first day of the month when the payment was due to the date when payment was made, together with attorney's fees, auditor's fees and liquidated damages.

Pl. Ex. G at 30.

Section 5-501 of the General Obligations Law provides for a rate of interest at 6% per annum, with certain exceptions, "unless a different rate is prescribed in section fourteen-a of the banking law." N.Y. Gen. Oblig. L. § 5-501(1). A different rate *is* prescribed in Section 14-a of New York Banking Law: "The maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum." N.Y. Bank. L. § 14-a(1). Another subsection of that statute makes clear that the 'maximum' rate of interest referenced in Section 14-a(1) is the 'prescribed' rate of interest referenced in New York General Obligations Law § 5-501(a):

> Whenever reference is made . . . in any . . . law, contract or document to the rate of interest prescribed . . . pursuant to this section or any former section fourteen-a of this chapter, such reference shall be deemed a reference to the rate of interest prescribed in subdivision one of this section.

---

[3]The above undisputed facts also lead me to conclude that Silver Streak assented to and should be bound by the terms of the 2002 CBA.

N.Y. Bank. L. § 14-a(5).

Thus, pursuant to the terms of the 1999 Declaration, plaintiffs are entitled to the following amounts with respect to any delinquent payments for the periods from January, 2000 through October, 2003, when the 1999 Declaration was amended: 1) 16% per annum interest; 2) attorney's fees; and 3) additional damages in "[t]he amount of interest charged on the unpaid contributions."[4]

*B. Delinquent contributions from November, 2003 through June, 2005*

On October 28, 2003, plaintiffs adopted an Amendment to the 1999 Declaration ("2003 Amendment"). Hr. 16; *see also* Pl. Ex. I (letter to employers outlining the terms of the 2003 Amendment). Silver Streak should be deemed bound by the 2003 Amendment, despite the fact that it was unilaterally executed by plaintiffs. First, Silver Streak's continuing course of conduct from that period up to the present date, with respect to the employment, wages, and fringe benefit contributions that it continued to provide to Local 282 Union workers, evidences its acceptance of the terms set forth in the 2003 Amendment. *See* Pl. ¶ 10 and Exs. D, E. Second, Silver Streak has not submitted any evidence to contradict plaintiffs' representations that the trustees notified Silver Streak of the 2003 Amendment. Hr. 16-17. Thus, it is clear that Silver Streak assented to

---

[4]Although the 1999 Declaration actually provides for additional damages in an amount "the greater of: (1) The amount of interest charged on the unpaid contributions, or (2) Liquidated damages in the form of 20 percent of the unpaid contributions," Pl. Ex. G at 31, plaintiffs have elected to limit their request for additional damages to the amount of interest owed on the untimely contributions, rather than respond to defendant's argument that liquidated damages in the amount of 20% of the unpaid principal would be a penalty. Pl. Letter of July 21, 2006, Docket Entry 23.

the terms of the 2003 Amendment by its course of conduct.[5]

The 2003 Amendment raised the interest applicable to delinquent contributions to 18% per annum. Pl. Ex. I. Therefore, for all untimely contributions to the Funds from November, 2003, through June, 2005, defendant is liable for the interest accrued at a rate of 18% per annum, or .015% per month. The other relevant provisions of the 1999 Declaration appear to be unaffected by the 2003 Amendment, and plaintiffs are therefore also entitled to attorney's fees and liquidated damages equal to the amount of interest due in connection with each delinquent payment during this period.

### III. The three categories of delinquent contributions at issue in this suit

There are three categories of delinquent contributions at issue in this suit: first, those that remained unpaid at the time this suit was filed; second, those that were paid late but before the suit was filed; and third, those that first came due but were paid late after the suit was filed. The first category triggers the statutory damages in ERISA, 29 U.S.C. § 1132(g)(2). Plaintiffs are limited to contractual remedies, however, for the second and third categories.

*A. Contributions that were unpaid at the time suit was filed*

Pursuant to 29 U.S.C. § 1132(g)(2), plaintiffs are entitled to unpaid principal, interest, liquidated damages, and attorney's fees for any contributions that defendant had not paid at the

---

[5]Another reason to conclude that Silver Streak is bound by the terms of the 2003 Amendment is that the 2002 CBA contained an incorporation clause providing that "[t]he Trust Agreements governing the Local 282 . . . Funds, as they shall be amended from time to time, are hereby made a part of this Agreement with the same force and effect as if fully incorporated herein." Pl. Ex. E at 18, Section 19(j). Although, as mentioned above, Silver Streak did not sign the 2002 CBA either, the same facts that led me to conclude that the company assented to the terms of the 1999 Declaration also compel the conclusion that Silver Streak is bound to the terms of the 2002 CBA by its course of conduct. It follows, therefore, that Silver Streak is also bound by the terms of the 2003 Amendment by way of the incorporation clause in the 2002 CBA.

time that this suit was filed. Plaintiffs allege that $294.41, a portion of the contributions due for December, 2001, remained unpaid at the time this suit was filed. Pl. ¶ 24.

Silver Streak signed and submitted a Remittance Report form to the Funds for December, 2001, indicating that $710.70 was owing as of February 28, 2002, for vacation and sick leave benefits. Pl. Ex. D. Silver Streak submitted a check made payable to "Local 282 Vacation/sick" in the amount of $710.70, dated February 28, 2002, which was returned to plaintiffs, unpaid by the bank for lack of funds in defendant's account. Compl. ¶ 29 and Ex. A; Hr. 11. By certified mail dated April 8, 2002, plaintiffs' attorney advised Silver Streak that the check it had remitted in the amount of $710.70 for vacation and sick leave for the claim period December, 2001, had bounced. Pl. Ex. H. The letter further advised that interest and attorney's fees were due in addition to the unpaid principal, and that unless the amount was paid in full within the next ten days, plaintiffs would commence legal action. *Id.* Subsequently, by certified mail dated October 10, 2002, plaintiffs' counsel advised Silver Streak that it was responsible for the interest accrued on delinquent contributions including those due for December, 2001. *Id.* Plaintiffs allege that, although defendant made subsequent installment payments to cover that particular contribution period in November, 2003, December, 2003, and May, 2005, a balance of $294.41 is still due. Hr. 11. Plaintiffs assert that they sent defendant letters requesting remittance of the unpaid $294.41 and that Silver Streak has never objected to the amounts set forth in these letters. Pl. ¶ 24.

Defendant contradicts plaintiffs' allegations by asserting that "[w]ith respect to the period[] of December, 2001 . . . no contributions were owed for these months and the plaintiff

failed to bill for any alleged delinquency charges." Def. 16;[6] *see also* Hr. 10. In choosing which version of the facts to credit, I note that plaintiffs would have little interest in contending falsely that only part of the amount due for December, 2001 has been paid; were plaintiffs to fabricate, presumably they would allege that defendant made no payment at all for that month. Instead, plaintiffs present a detailed account, corroborated by documentary evidence, of defendant's failure to remit the entire amount due. I therefore find that there were unpaid contributions due from December, 2001, at the time this suit was filed, and that $294.41 for that period remains due to this day.

*B. Untimely contributions that were paid before the suit was filed or that came due after the suit was filed*

Plaintiffs also allege that interest, liquidated damages, and attorney's fees are due for defendant's late payments to the Fund for most of the contribution periods from September, 2000 through June, 2005. Plaintiffs concede that for every period at issue up to December, 2004 (except December, 2001), Silver Streak paid the principal due and owing before this suit was commenced. Plaintiffs also seek to recover interest and liquidated damages for three periods after the lawsuit was filed in which defendant paid its contributions late. Plaintiffs are therefore not entitled to statutory damages with respect to any of these delinquent payments. Hr. 22. *See Iron Workers Dist. Council of Western N.Y. and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995) (explaining that to obtain one or all of the measures of relief set forth in 29 U.S.C. § 1132(g)(2), "the action must be one to enforce the obligation to pay contributions under § 1145, and therefore no such suit can be

---

[6]"Def." refers to Defendants' Affirmation in Opposition to Plaintiff's Claim for Damages, dated March 25, 2006, not filed electronically until April 10, 2006, Docket Entry 21.

commenced in the absence of unpaid contributions"). However, as already discussed, the 1999 Declaration and the 2003 Amendment provide a contractual basis for the assessment of interest, additional damages, and attorney's fees in the event of untimely contribution payments.

### C. *The Reminder Letters and the Attorney Letters*

Before calculating the amount of interest due, it is necessary to determine when defendant's payment obligation for each period in issue accrued. Certain letters sent by plaintiffs and their attorneys are relevant to this determination.

Each time that Silver Streak was in default of a contribution period payment for approximately ten days, plaintiffs mailed the company a letter alerting it that contributions were due (the "Reminder Letters"). The Reminder Letters provide, in pertinent part, as follows:

> FAILURE TO TIMELY SUBMIT THE REMITTANCE REPORT FORM, TOGETHER WITH PAYMENTS AS REQUIRED, AUTOMATICALLY PLACES YOU IN A DELINQUENT STATUS. AS SUCH, CONTRIBUTIONS ARE NOW DUE AND OWING WITH INTEREST ACCRUING AT THE RATE OF 16% FROM THE DATE ORIGINALLY DUE, UNTIL THE DATE PAYMENT IS RECEIVED.
> UNLESS THE AFOREMENTIONED REPORT AND REMITTANCES ARE RECEIVED IN FULL TEN DAYS AFTER THE DATE OF THIS LETTER THIS MATTER WILL BE REFERRED TO THE FUNDS' ATTORNEY FOR COLLECTION WITHOUT FURTHER NOTICE.
> Please be advised that in the event that this delinquency is referred to Counsel, the employer will be responsible for additional interest, attorney's fees, liquidated damages and disbursements incurred.

Def. Ex. B (emphasis in original). Defendant correctly argues that the Reminder Letters mailed by plaintiffs afforded defendant a grace period within which it could avoid liquidated damages and attorney's fees if payment was made in full. Def. 14. Silver Streak had a right to rely on the promise in these letters that the attorney's fees and additional damages would only accrue if it

failed to remit payment – including the interest that had accrued – within ten days from the date of the letter. The record reveals that defendant remitted payment within the window afforded by the Reminder Letter only once, for the July, 2003 contribution period. Because defendant did not pay any of the interest that had already accrued for its delinquency in making that contribution, however, the matter still had to be referred to plaintiffs' attorney for collection and defendant should not be relieved from attorney's fees and liquidated damages due for that period.[7]

After each delinquency was referred for collection, plaintiffs' counsel sent Silver Streak follow-up letters (the "Attorney Letters"). *See* Def. 15 and Ex. C. The Attorney Letters make clear that Silver Streak is already responsible for "charges including but not limited to interest, liquidated damages, attorney's fees and audit charges" for the relevant pay period. Def. Ex. C. The Attorney Letters further provided that "[u]nless arrangements are made within the next ten (10) days to pay in full the amounts due and owing, it will be necessary for this office to commence legal action." *Id.* Thus, unlike the Reminder Letters and contrary to defendant's argument, the Attorney Letters cannot be reasonably read to afford defendant any additional grace period. The ten days referred to in these letters gave Silver Streak the opportunity to avoid legal action by making prompt payment, but did not offer any relief from the unpaid principal, interest, and liquidated damages already owing.

---

[7]The terms of both the 1999 Declaration and the 2003 Amendment excused Silver Streak from incurring the contractual damages of attorney's fees and additional interest as long as it remitted payment no more than five days past the contribution due date. Pl. Ex. G at 30. Silver Streak does not allege, however, that it remitted payment within that five day window for any of the periods at issue here. To the contrary, defendant acknowledges that its payments were routinely late. Def. 4 *et seq.*

**IV. Attorney's fees**

Plaintiffs are also entitled to recover their attorney's fees. Upon a finding that defendant has been delinquent in paying contributions, liability for attorney's fees related to the litigation is mandatory under Section 1132(g). *Iron Workers*, 69 F.3d at 1506. Additionally, as discussed above, defendant is liable for attorney's fees incurred prior to commencement of this litigation pursuant to the terms of the 1999 Declaration and the Attorney Letters.

All claims for attorney's fees in the Second Circuit must comply with *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983), which requires that contemporaneous time records be submitted with all fee applications. 711 F.2d at 1148. Plaintiffs have submitted an attorney's declaration and supporting contemporaneous time records. Pl. Ex. J. Plaintiffs seek reimbursement for $21,633.76 in attorney's fees for 108.10 hours of work billed at the following rates: $275 per hour for a partner of more than thirty years experience; $200 per hour for associates; and $70 per hour for a paralegal. In light of the partner's significant experience I find the hourly rates and the time expended to be reasonable. Pl. ¶ 45. However, I have reduced the award of attorney's fees to $21,371.66 because in a few instances plaintiffs' counsel appears to have billed for pay periods that are not alleged to have been delinquent.[8] Plaintiffs also request $747.58 in costs. I find the amount of costs plaintiffs seek to be reasonable and I therefore order that plaintiffs be awarded costs in the amount of $747.58.

---

[8]For example, plaintiffs seek "review referral" fees dated April 6, 2001, May 7, 2002, October 10, 2002, August 6, 2003, September 8, 2004, and January 6, 2005, for contribution periods that plaintiffs' papers never allege were delinquent.

## V. Calculations

The following table reflects the Court's calculations of interest and liquidated damages, based on the above findings:

| Pay Period | Principal owed | Date originally due | Date payment made[9] | Days delinquent | Interest[10] | LD (interest) |
|---|---|---|---|---|---|---|
| 9/00 | 1,324.80 | 11/15/00 | 12/13/00 | 28 | paid | 16.32 |
| 10/00 | 2,502.40 | 12/15/00 | 1/10/01 | 26 | paid | 28.63 |
| 11/00 | 2,944 | 1/15/01 | 2/9/01 | 25 | 32.38 | 32.38 |
| 12/00 | 2,355 | 2/15/01 | 5/7/01 | 81 | 83.93 | 83.93 |
| 4/01 | 2,342.40 | 6/15/01 | 7/9/01 | 24 | 24.74 | 24.74 |
| 7/01 | 2,358 | 9/15/01 | 10/9/01 | 24 | 24.90 | 24.90 |
| 8/01 | 3,144 | 10/15/01 | 11/5/01 | 21 | paid | 29.05 |
| 9/01 | 1,886.40 | 11/15/01 | 1/30/02 | 76 | 63.08 | 63.08 |
| 10/01 | 4,841.09 | 12/15/01 | 1/30/02 | 46 | 97.98 | 97.98 |
| 11/01 | 4,268.69 | 1/15/02 | 2/28/02 | 44 | 82.64 | 82.64 |

---

[9]The date on which payment was made is taken from the Schreiber Affirmation in Support of Plaintiffs' Claims for Damages. Although defendant Silver Streak argues that the dates were in fact earlier, it makes this argument by contending that the court should use the date it mailed its payments to plaintiffs, rather than the date on which plaintiffs received defendant's payments. The Collective Bargaining Agreement requires that payments be "made" within 45 days of the end of each month. Pl. Ex. B at 18, Section 20(g). It is more reasonable to consider a payment as having been "made" when it is received by the party to whom it is owed rather than when it is placed in the mail by the indebted party. Morever, the letters which the court construes as affording defendant a ten-day grace period explicitly require that payment be received within ten days. Pl. Ex. H.

[10]Interest on late payments for the periods from September, 2000 through October, 2003 have been calculated at a rate of 16% per annum, or .044% per day. Late payments for the periods from November, 2003 through June, 2005 are subject to the increased interest rate of 18% per annum, or .049% per day.

| Pay Period | Principal owed | Date originally due | Date payment made | Days delinquent | Interest | LD (interest) |
|---|---|---|---|---|---|---|
| 12/01[11] | 294.41 | 2/15/02 | -- | 1812 | 234.73 | 234.73 |
| 1/02 | 704.40 | 3/15/02 | 7/25/02 | 132 | 40.91 | 40.91 |
| 3/02 | 786 | 5/15/02 | 7/25/02 | 71 | 24.55 | 24.55 |
| 4/02 | 3,144 | 6/15/02 | 7/25/02 | 40 | 55.33 | 55.33 |
| 8/02 | 1,688 | 10/15/02 | 11/7/02 | 23 | 17.08 | 17.08 |
| 9/02 | 1,688 | 11/15/02 | 12/13/02 | 28 | 20.80 | 20.80 |
| 10/02 | 2,363.2 | 12/15/02 | 1/27/03 | 43 | 44.71 | 44.71 |
| 11/02 | 1,856.8 | 1/15/03 | 2/21/03 | 37 | 30.23 | 30.23 |
| 12/02 | 2,025.6 | 2/15/03 | 3/10/03 | 23 | 20.50 | 20.50 |
| 4/03 | 2,532 | 6/15/03 | 7/9/03 | 24 | 26.74 | 26.74 |
| 7/03 | 2,706 | 9/15/03 | 10/03/03 | 18 | 21.43 | 21.43 |
| 11/03 | 729.6 | 1/15/04 | 5/17/04 | 123 | 43.97 | 43.97 |
| 12/03 | 2,736 | 2/15/04 | 5/17/04 | 92 | 123.34 | 123.34 |
| 1/04 | 2,553.6 | 3/15/04 | 5/17/04 | 63 | 78.83 | 78.83 |
| 11/04 | 2,304 | 1/15/05 | 3/31/05 | 75 | 84.67 | 84.67 |
| 12/04 | 3,840 | 2/15/05 | 3/31/05 | 44 | 82.79 | 82.79 |
| 4/05 | 3,648 | 6/15/05 | 7/18/05 | 33 | 58.99 | 58.99 |
| 5/05 | 2,304 | 7/15/05 | 9/14/05 | 61 | 68.87 | 68.87 |
| 6/05 | 4,224.16 | 8/15/05 | 9/14/05 | 30 | 62.10 | 62.10 |
| **Totals** | | | | | **1550.22** | **1624.22** |

---

[11]Because some of the principal owed for this period was unpaid at the time this suit was filed and remains due, the statutory damages from ERISA, 29 U.S.C. § 1132(g)(2), apply. There is no difference in result, however, since the greater of the possible additional damages is the interest rate and not 20% of the unpaid principal. Interest has been calculated from February 16, 2002, to February 2, 2007.

## Conclusion

For the reasons stated above, I hereby direct that judgment be entered dismissing all claims against defendant Cynthia Persichilli and awarding plaintiffs, on their claims against defendant Silver Streak Transport Ltd., the total amount of $25,588.09, comprised of: 1) unpaid principal in the amount of $294.41; 2) interest in the amount of $1,550.22; 3) liquidated damages in the amount of $1,624.22; and 4) attorney's fees in the amount of $21,371.66 and $74.58 in costs.

/s/
**Steven M. Gold**
**United States Magistrate Judge**

**Brooklyn, New York**
**February 2, 2007**

U:\silver streak smg 020207.wpd